UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Wayne E. Hopper,
     Plaintiff

     v.                                Civil No. 06-cv-10-SM
                                            Opinion No. 2007 DNH 017
Standard Insurance Company;
William Gallagher Associates;
and Cubic Wafer, Inc.,
     Defendants

## O R D E R

Wayne Hopper brings this suit against Standard Insurance Company ("Standard"), William Gallagher Associates ("WGA"), and Cubic Wafer, Inc. ("Cubic Wafer" or "the Company"), formerly known as Xanoptix, Inc., claiming that he relied, to his detriment, upon incorrect representations made by the defendants regarding Cubic Wafer's group disability insurance plan. Hopper also alleges that Cubic Wafer violated his rights under the Americans with Disabilities Act ("ADA").

Specifically, Hopper asserts claims of negligent misrepresentation (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), deceptive practices in violation of N.H. Rev. Stat. Ann. ("RSA") § 358-A:2 (Count IV), breach of fiduciary duty (Count V), respondeat superior (Count VI), negligent hiring,

training, and supervision (Count VII), and fraudulent misrepresentation (Count VIII) against all three defendants. Against Cubic Wafer alone, Hopper further alleges wrongful termination in violation of 42 U.S.C. § 12101 <u>et seq.</u> (Count IX) and RSA ch. 354-A (Count X), refusal to rehire (Count XI), failure to accommodate (Count XII), and unlawful employment discrimination under RSA ch. 354-A (Count XIII).

Defendants Standard and WGA move to dismiss Counts I through VIII.  For the reasons set forth below, Standard's motion is granted, and WGA's motion is granted in part and denied in part.

## STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(6) permits a court to dismiss a claim when the plaintiff "fail[s] to state a claim upon which relief can be granted."  Under this rule, the court must conduct a limited inquiry, focused not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  When reviewing a motion to dismiss, the court must accept all facts pleaded in the complaint as true and any inferences must be drawn in the light most favorable to the plaintiff.  <u>See, e.g., Citibank v. Grupo Cupey, Inc.</u>, 382 F.3d 29, 31 (1st Cir. 2004) (quoting <u>TAG/ICIB Servs., Inc. v. Pan Am.</u>

2

Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)).  The court may,
however, "reject claims that are made in the complaint if they
are 'bald assertions' or 'unsupportable conclusions.'"  United
States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220,
224 (1st Cir. 2004) (quoting Arruda v. Sears, Roebuck & Co., 310
F.3d 13, 18 (1st Cir. 2002)).  "A district court may grant a
12(b)(6) motion to dismiss for failure to state a claim upon
which relief can be granted only if 'it clearly appears,
according to the facts alleged, that the plaintiff cannot recover
on any viable theory.'"  Pomerleau v. W. Springfield Pub. Sch.,
362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v.
Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).


## BACKGROUND

     The relevant facts, as alleged in the complaint (document
no. 1) and accepted as true for purposes of this motion, are as
follows.


     Hopper, a resident of Nashua, New Hampshire, suffers from
multiple sclerosis.  He was diagnosed in 1995.  On February 13,
2003, Hopper was offered a Materials Manager position at Cubic
Wafer's facility in Merrimack, New Hampshire.  At the time, WGA
served as Cubic Wafer's insurance broker, acting as a liaison
between Standard Insurance Company (which underwrote the benefits

provided) and Cubic Wafer's employees.  WGA's primary duties
involved assisting in identifying coverage limitations and
identifying and recommending new coverage options that might be
of interest to the Company.  Through WGA, Cubic Wafer selected
Standard as the insurance carrier to provide underwritten life,
health, and disability benefits for Cubic Wafer's employees.

Given his medical condition, maintaining continuous health
and disability insurance coverage was of critical importance to
Hopper.  Accordingly, before giving up his in-place coverage and
accepting the position as Cubic Wafer's Materials Manager, he
made a point of discussing insurance coverage issues with the
appropriate human resources personnel.  After first speaking with
representatives from WGA, Cubic Wafer's staff assured Hopper that
were he to accept the offered position, his health and disability
insurance coverage and benefits would continue uninterrupted, and
that he would not be subjected to a waiting period, because he
had been covered under "a current, similar disability policy, and
had held uninterrupted coverage for many years preceding his
diagnosis."  (Compl. ¶ 30.)

Hopper, relying upon Cubic Wafer's express representations,
accepted the Materials Manager position and, believing that his
health and disability insurance coverage would transition

4

seamlessly, allowed his existing disability policy to lapse in May of 2003.  A little more than a year later, in August or September of 2004, Hopper's multiple sclerosis worsened.  He underwent intensive chemotherapy and other treatment that necessitated a leave of absence.  When discussing short term disability leave with Cubic Wafer's human resources department, Hopper was again assured that, following short-term disability, he was eligible for long-term disability benefits and that those long-term benefits would become available automatically if Hopper was still unable to work when his short-term disability insurance benefits were exhausted.

Although Hopper initially planned to return to Cubic Wafer following disability leave, he was also told by Cubic Wafer personnel that "he would be able to retire on long term disability and receive a 'severance payment.'"  (Compl. ¶ 52.) Relying upon Cubic's repeated assurances that his long term disability benefits would become effective immediately upon exhaustion of short term disability benefits, Hopper accepted a severance package offered by Cubic Wafer and began short term disability leave on September 17, 2004.

In November of 2004, Standard and WGA notified Cubic Wafer that the long-term disability policy providing plan benefits

included a 24 month waiting period provision, and that Standard
was unwilling to retroactively amend the policy to alter or
remove that requirement.  Consequently, in December of 2004,
Hopper was denied long-term disability benefits on grounds that
he had not yet satisfied the 24 month waiting period prerequisite
for long-term benefits under the insurance policy that provided
those benefits.

     Hopper discussed the issue with Cubic Wafer's human
resources personnel, who again assured him that he was, in fact,
entitled to long-term disability benefits, and that the 24-month
waiting period provision upon which Standard relied in denying
benefits was inapplicable to him.  As a result of those
discussions, and relying on the statements made by Cubic Wafer
regarding the disability insurance coverage available to him,
Hopper elected not to seek re-employment with Cubic Wafer, but
instead pursued an administrative appeal of Standard's benefits
denial.

     On February 16, 2005, Hopper's administrative appeal was
denied.  The issue was later reviewed by an independent quality
assurance unit, which upheld the denial on February 25, 2005.
On April 11, 2005, Hopper filed a charge of discrimination with
both the New Hampshire Human Rights Commission and the federal

Equal Employment Opportunity Commission ("EEOC"), alleging that Cubic Wafer had encouraged him to leave the company and "retire" on his long-term disability benefits due to his medical condition.  The EEOC issued a Notice of Right to Sue on October 26, 2005, and this suit followed.

Count I asserts that defendants negligently misrepresented the scope of insurance coverage available to Hopper and that those misrepresentations were material to his decision to accept employment with Cubic Wafer.  Count II alleges breach of contract.  Count III asserts that the defendants breached the implied covenant of good faith and fair dealing implicit in the employment and insurance contracts.  Count IV alleges a violation of RSA ch. 358-A:2 for making false and misleading claims regarding insurance coverage and the availability of certain benefits.  Count V asserts that the defendants breached fiduciary duties owed to Hopper, and Count VI asserts a claim under the doctrine of <u>respondeat</u> <u>superior</u>, alleging that Cubic Wafer's and WGA's employees were acting as agents of Standard when they made the alleged misrepresentations.  Count VII alleges that defendants negligently hired, trained, and supervised their employees, and Count VIII asserts that defendants made fraudulent misrepresentations upon which Hopper reasonably relied in altering his position to his detriment.

7

Counts IX through XIII relate to Cubic Wafer only.  Count IX asserts a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), for wrongful termination, while Count X is brought under RSA ch. 354-A alleging the same conduct.  Count XI alleges violations of both the ADA and RSA ch. 354-A for refusal to rehire based upon Hopper's disability.  Count XII is an ADA claim for failure to reasonably accommodate Hopper's disability, and Count XIII is for general employment discrimination under RSA ch. 354-A.

## DISCUSSION

Standard moves to dismiss all of the claims against it on grounds that they are preempted by the Employee Retirement Income Security Act ("ERISA").[1]

Generally, ERISA preempts all state laws and state-law claims that "relate to" employee welfare benefit plans.  See 29 U.S.C. § 1144(a).  The "relate to" standard reaches and preempts "(1) state laws that 'mandate[] employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement

---

[1] Hopper does not dispute that the plan at issue is an employee welfare benefit plan regulated by ERISA.

mechanisms' to ERISA's enforcement regime." <u>Hampers v. W.R.
Grace & Co., Inc.</u>, 202 F.3d 44, 51 (1st Cir. 2000) (quoting <u>N.Y.
State Conference of Blue Cross & Blue Shield Plans v. Travelers
Ins. Co.</u>, 514 U.S. 645, 656 (1995)).  In determining whether a
particular state cause of action constitutes an alternative
enforcement mechanism, "we must 'look beyond the face of the
complaint' and determine the real nature of the claim 'regardless
of plaintiff's . . . characterization.'" <u>Hampers</u>, 202 F.3d at 51
(quoting <u>Danca v. Private Health Care Sys., Inc.</u>, 185 F.3d 1, 5
(1st Cir. 1999).


I.    <u>Negligent Misrepresentation (Count I) and Fraudulent
      Misrepresentation (Count VIII)</u>.

      Count I of Hopper's complaint alleges that Standard, along
with its alleged agents, WGA and Cubic Wafer, negligently made
erroneous representations and promises regarding the scope of
disability insurance coverage, upon which Hopper relied in
leaving his prior employment to accept the Materials Manager
position at Cubic Wafer.  Count VIII is a fraudulent
misrepresentation claim based upon the same conduct.


      Invoking ERISA preemption, Standard relies principally on
two controlling precedents, <u>Vartanian v. Monsanto Co.</u>, 14 F.3d
697 (1st Cir. 1994), and <u>Carlo v. Reed Rolled Thread Die Co.</u>, 49

F.3d 790 (1st Cir. 1995).   In <u>Vartanian</u>, the employee-plaintiff
claimed that he retired in reliance upon misleading statements
suggesting that his employer had no intention of offering an
"enhanced severance program."  14 F.3d at 699.   Based upon that
information, plaintiff opted to retire, only to find that his
employer did subsequently offer a more desirable severance
program.  <u>Id.</u>  The district court's dismissal of plaintiff's
misrepresentation claim was affirmed, the court of appeals
finding that "the existence of the [enhanced plan] is inseparably
connected to any determination of liability under state common
law of misrepresentation."  <u>Id.</u> at 700.

Similarly in <u>Carlo</u>, the plaintiffs, Carlo and his wife,
alleged that the employer-defendant made misleading statements
about the scope of his retirement benefits.  49 F.3d at 793 n. 5.
The court held that the Carlos' "claims [were] preempted because
they have a 'connection with or reference to'" the retirement
plan, further explaining that, just like the plaintiff in
<u>Vartanian</u>, the Carlos "sought damages for an employer's alleged
misrepresentation concerning the scope or existence of early
retirement benefits" which required the court to review the ERISA
plan.  <u>Id.</u> at 794-95.

Hopper attempts to distinguish both <u>Vartanian</u> and <u>Carlo</u> on grounds that he does not seek benefits he would have received under the ERISA plan, but instead, seeks only the wages and benefits he lost as a result of accepting a severance package in lieu of requesting an accommodation for his disability, which would have allowed him to continue working.[2]  But Hopper's complaint discloses that he seeks compensation (Count I) for "all losses sustained as a result of the denial of his long-term disability." (Compl. pp. 14 ("Wherefore" Clause).)  Similarly, in Count VIII, he alleges that Standard failed to properly "advise him of his rights and remedies under the contract and claims process" (Compl. ¶ 120.)  Such references to the denial of plan benefits and Hopper's contractual rights lead inescapably to the conclusion that adjudication of his misrepresentation claims requires review of the ERISA-governed plan.

---

[2] Hopper's notion of "retirement" on long term disability benefits is somewhat off the mark.  A typical disability insurance plan provides benefits only until the beneficiary is able to return to work.  <u>See</u>, <u>e.g.</u>, <u>Matias-Correa v. Pfizer, Inc.</u>, 345 F.3d 7, 9 (1st Cir. 2003) (long term disability benefits plan provides benefits for those who are "totally disabled" and "unable to perform the basic duties" of one's occupation).  Hopper suggests, however, that had Cubic Wafer reasonably accommodated his multiple sclerosis condition, he could, and would have returned to work, (Compl. ¶ 56), thereby rendering him ineligible for the very long-term benefits he claims.

The court in <u>Carlo</u> rejected the same argument Hopper makes here.  There plaintiffs also asserted that their misrepresentation claims "do not relate to the [retirement plan] because they are seeking damages for a tort committed by [the employer] within the course of [Carlo's] employ."  <u>Carlo</u>, 49 F.3d at 794 n. 3.  The court found the "distinction to be meaningless" because, "'ERISA's preemption of state law claims depends on the conduct to which such law is applied, not on the form or label of the law.'"  <u>Id.</u> (quoting <u>Cefalu v. B.F. Goodrich Co.</u>, 871 F.2d 1290, 1294 (5th Cir. 1989) (internal quotation marks omitted)).  As in <u>Carlo</u>, although Hopper does not seek to extend or enlarge the coverage afforded him under the disability benefit (insurance) plan, "any money [he] obtained from [his] suit would be functionally a benefit to which the terms of the plan did not entitle [him]."  <u>Id.</u> (quoting <u>Pohl v. Nat'l Benefits Consultants, Inc.</u>, 956 F.2d 126, 128 (7th Cir. 1992)).  "This type of end run is regularly rebuffed."  <u>Id.</u> (quoting <u>Phol</u>, 956 F.2d at 128).

Hopper argues, alternatively, that neither <u>Vartanian</u> nor <u>Carlo</u> remain viable in view of the Supreme Court's decision in <u>Travelers</u>, which, he asserts, limited the expansive nature of the ERISA preemption clause as applied in <u>Vartanian</u> and <u>Carlo</u>.  <u>See</u> <u>Carlo</u>, 49 F.3d at 794 (describing the preemption language as "deliberately expansive" (citations omitted)).  But, as the Court

12

of Appeals explained, the Travelers court "identified three categories of state laws that 'relate to' ERISA plans in such a way that preemption of those laws," Hampers, 202 F.3d at 51 (citing Travelers, 514 U.S. at 656 (citation omitted)), remains true to ERISA's original purpose of ensuring "that plans and plan sponsors would be subject to a uniform body of benefits law." Hampers, 202 F.3d at 51 (citing Travelers, 514 U.S. at 658–59).

Thus, while Travelers serves to focus the ERISA preemption inquiry, by ensuring that courts remain cognizant of the original goals and objectives of the preemption clause, it did not overrule or otherwise call into question prior preemption cases. The plain language of Hopper's complaint makes clear that the misrepresentation claims against Standard "relate to" the ERISA plan, since adjudication of those claims would necessarily require the court to compare the representations made to Hopper with the coverage provided under the plan.

Under Travelers, Hopper's misrepresentation claims, to the extent they are asserted against Standard, fall squarely into the third category.  Granting the relief Hopper appears to seek would effectively create an alternative benefit enforcement mechanism beyond that which ERISA already provides.  Accordingly, Counts I

13

and VIII are preempted, and defendant's motion to dismiss those counts is granted.

Hopper's misrepresentation claims against WGA, however, are different.  Unlike Standard, which functions as an ERISA entity, see Hampers, 202 F.3d at 53 (citing Stetson v. PFL Ins. Co., 16 F. Supp. 2d 28, 33 (D. Me. 1998)) (explaining that the "primary ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries of the plan"), WGA is strictly an insurance broker, engaged in sales and marketing functions.

WGA had no direct control over Standard's insurance policy or the benefits plan.  WGA did not administer the plan, and did not determine participant eligibility for benefits or consider appeals of benefit denial.  Put differently, Hopper's claims against WGA are limited to WGA's "role as a seller of insurance, not as an administrator of an employee benefits plan." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 991 (10th Cir. 1999).

This result is consistent with the underlying goal of ERISA "to protect the interests of employees and other beneficiaries of employee benefit plans."  Morstein v. Nat'l Ins. Servs., Inc., 93 F.3d 715, 723 (11th Cir. 1996).  "If ERISA preempts a

14

beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan." <u>Id.</u>  As a result "[t]hese employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants."  <u>Id.</u> at 723-24.

Accordingly, Hopper's misrepresentation claims against WGA are not preempted by ERISA.  WGA's motion to dismiss Counts I and VIII is denied.

II.  <u>Breach of Contract (Count II) and Breach of the Implied Covenant of Good Faith (Count III).</u>

In Count II of his complaint, Hopper alleges that Standard committed an "egregious and wanton bad faith breach of the policy provisions" (Compl. ¶ 81), and that the "actions of the [d]efendants were grossly negligent and/or a willful and malicious effort to deny [Hopper] his rights under . . . the contract of insurance." (Compl. ¶ 82.)  Moreover, Hopper asserts that the "blatant disregard of the contractual policy language constitutes an act of . . . wanton and malicious bad faith," (Compl. ¶ 83), and claims that the defendants are "obligated to

15

provide either the benefits promised, or the financial equivalent thereof."  (Compl. ¶ 85.)

Similarly, in Count III, Hopper alleges that the defendants "refused to provide [Hopper's] contractual benefits of long term disability insurance," (Compl. ¶ 90), and asserts that "he is entitled to contractual benefits of his policies of insurance." (Compl. pp. 17–18 ("Wherefore" Clause)).

The Court of Appeals for this circuit has "consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA–regulated plan to determine liability under the state law cause of action." Hampers, 202 F.3d at 52 (citations omitted).  Further, "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan."  Hampers, 202 F.3d at 52 (citing Carlo, 49 F.3d at 794).

In his complaint, Hopper explicitly invokes the insurance plan and the benefits to which he is allegedly entitled under that plan as well as the insurance contract that underwrites the plan benefits.  It is therefore plain that any analysis of Counts II and III would necessarily require the court to evaluate and interpret the ERISA plan's terms to determine benefit eligibility

16

(or "insurance coverage").  Evaluating eligibility requirements of the benefit plan in the context of state breach of contract and breach of the implied covenant of good faith and fair dealing claims would effectively but impermissibly provide an alternative enforcement mechanism to ERISA's benefit enforcement regime. Counts II and III are therefore preempted by ERISA and Standard's motion to dismiss those counts is granted.

Hopper's breach of contract and breach of the implied covenant of good faith and fair dealing claims against WGA are similarly dismissed, but for a different reason.  There is no suggestion that Hopper ever contracted with WGA.  The insurance policy underwriting Cubic Wafer's benefits plan was issued to Cubic Wafer by Standard.  Hopper was not a party to any contract between Cubic Wafer and WGA or between WGA and Standard.  While Hopper may have stood to benefit from those various contractual relationships, he was not a party to any of them, and he was entitled to benefits only as an ERISA plan beneficiary. Accordingly, as against WGA, Counts II and III fail to state viable claims.  WGA's motion to dismiss is granted.

III. <u>Deceptive Practices – RSA 358–A:2 (Count IV).</u>

Count IV of Hopper's complaint alleges that Standard made false and misleading claims regarding both its policies and

17

claims practices in violation of New Hampshire's consumer
protection statute, RSA 358-A:2.  That statute generally
prohibits "any unfair or deceptive act or practice in the conduct
of any trade or commerce within this state."  RSA 358-A:2.

This court has previously held that RSA 358-A:2 does not
fall under the provisions of the ERISA savings clause, which
exempts from preemption laws that regulate insurance.  Camire v.
Aetna Life Ins. Co., 822 F. Supp. 846, 852 (D.N.H. 1993) (noting
that RSA 354-A:2 does not transfer or spread policy risk, affect
an integral part of the insurer-insured relationship, does not
regulate terms of the insurance contract itself, nor is its
applicability limited to insurance entities).  Accordingly, the
claim made under the consumer protection statute is preempted to
the extent that it relates to an ERISA benefits plan.

As with Hopper's other claims, determining whether Standard
made false and misleading statements about its insurance policies
and claims practices would require the court to review the
benefit plan to compare the relevant provisions of the plan to
the representations and promises allegedly made to Hopper.
Because ERISA preempts laws where "a plaintiff, in order to
prevail, must plead, and the court must find, that an ERISA plan
exists," and because "[t]here is simply no cause of action if

18

there is no plan," <u>Vartanian</u>, 14 F.3d at 700, Hopper's deceptive practices claim under RSA 358-A:2 is preempted by ERISA and Standard's motion to dismiss that count is granted.

That claim is dismissed as to WGA as well, though for a different reason.  RSA 358-A:3 specifically states that RSA ch. 358-A does not apply to "[t]rade or commerce that is subject to the jurisdiction of . . . the insurance commissioner . . ."  <u>See also</u> <u>Bell v. Liberty Mut. Ins. Co.</u>, 146 N.H. 190, 194 (2001) (". . . the insurance trade is exempt from the Consumer Protection Act pursuant to RSA § 358-A:3, I").  Because WGA is, as Hopper notes in his complaint, an insurance brokerage firm, (Compl. ¶ 13), its conduct falls outside the scope of RSA ch. 358-A.  Accordingly, as against WGA, Count IV fails to state a viable claim.  WGA's motion to dismiss Count IV is granted.

IV.   <u>Breach of Fiduciary Duty (Count V), Respondeat Superior</u>
      <u>(Count VI), and Negligent Hiring, Training, and Supervision</u>
      <u>(Count VII).</u>

Count V of Hopper's complaint alleges that Standard breached its fiduciary duty to Hopper by failing to competently administer the benefits plan and, through its negligent statements regarding the scope of benefits available, improperly induced Hopper into accepting a position with Cubic Wafer.  Count VI alleges that employees of WGA and Cubic Wafer, as agents of Standard, were

improperly trained with regard to the scope of the ERISA plan
and, as a result, misrepresented material terms of the insurance
coverage benefits available to Hopper under the plan.  Finally,
Count VII alleges that Standard, through its agents Cubic Wafer
and WGA, improperly trained and supervised its employees by
knowingly allowing them to make false and misleading
representations about the scope of coverage available to Hopper.

These claims are all preempted for the same reasons set
forth above.  To determine whether Standard's alleged agents were
improperly trained regarding the insurance coverage available
under the benefit plan, and whether Standard breached its
fiduciary duty with respect to its obligations under the benefit
plan, all necessarily require the court to review the ERISA plan
at issue.  Such review of ERISA plans outside the ambit of the
dispute resolution scheme established by ERISA is precisely what
the statute aims to preclude.  See Egelhoff v. Egelhoff, 532 U.S.
141, 149 (explaining that one of the principal goals of ERISA is
to establish a uniform administrative scheme).  Accordingly,
Standard's motion is granted, and Counts V, VI, and VIII of
plaintiff's complaint are dismissed.

As against WGA, however, Counts V, VI, and VIII remain
viable for the same reasons that Hopper's misrepresentation

claims are not preempted.  WGA is not an ERISA entity.  Issues regarding how it trains and supervises its employees are not sufficiently related to the ERISA plan to warrant preemption. Moreover, because WGA is not an ERISA entity, any fiduciary duty that WGA allegedly owes to Hopper arises, if at all, independently of the ERISA plan and, therefore, would not be sufficiently "related" to justify preemption.  It is true that if Hopper were to prevail on these counts, the subsequent damages inquiry would necessarily require a review of the plan.  Courts have recognized, however, that immunizing insurance brokers from improper conduct in the sales process would not serve Congress's purpose for ERISA because " . . . employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan."  Morstein, 93 F.3d at 723.  Accordingly, WGA's motion to dismiss Counts V, VI, and VIII is denied.


## CONCLUSION

For the foregoing reasons, Defendant Standard Insurance Company's Motion to Dismiss (document no. 8) is granted as to all claims asserted against it.  Defendant William Gallagher Associates's Motion to Dismiss (document no. 35) is granted in part and denied in part.  Specifically, Counts II, III, and IV, as against William Gallagher Associates are dismissed.

21

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 7, 2007

cc:  Edwinna C. Vanderzanden, Esq.
     Byrne J. Decker, Esq.
     William D. Pandolph, Esq.
     Charles P. Bauer, Esq.
     Stephen A. Duggan, Esq.